# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:19-cr-0047 |
| ) | |
| **VIOLET ANNE GOLDEN and STEPHANIE** ) | |
| **BARNES,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

**BEFORE THE COURT** is the motion of Violet Anne Golden ("Golden") to conduct her sentencing in this matter by video conferencing.

On July 11, 2019, the United States filed a twenty-six count indictment, followed by an amended thirty-one count indictment on November 19, 2019, charging Golden and her co-defendant Stephanie Barnes ("Barnes") with numerous offenses stemming from an alleged ongoing conspiracy wherein Golden, then the Chairperson of the Casino Control Commission (the "Casino Commission") and Barnes, then a contractor of the Casino Commission, improperly used Casino Commission funds for personal use. The co-defendants allegedly made numerous personal purchases with Casino Commission credit cards, paid those bills using funds appropriated from Divi Casino's payment of purported back fees, and supported those personal expenses through falsified invoices. On January 14, 2020, Golden withdrew her previously entered not-guilty plea and pled guilty to Counts Four and Twenty-Seven of the amended indictment. Sentencing was initially scheduled for May 14, 2020, continued to June 16, 2020, continued again to July 8, 2020, then continued again to August 13, 2020.

Golden initially filed a motion on May 5, 2020 (ECF No. 209) requesting that her sentencing be conducted via video conference. The Court denied Golden's motion by Order entered May 11, 2020, finding that Golden had provided no reason that her sentencing cannot be further delayed without serious harm to the interests of justice. ECF No. 213.

Golden then moved again on August 7, 2020, for her sentencing to be conducted by video conferencing, this time analyzing the appropriate factors under the CARES Act. ECF No. 228.

Federal Rule of Criminal Procedure 43 requires that a "defendant must be present at . . . sentencing." Fed. R. Crim. P. 43(a)(3). Nevertheless, in light of the COVID-19 pandemic, Congress recently provided certain circumstances under which a sentencing may be conducted by video teleconference. On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). The Act was signed into law by the President of the United States that same day. Among its many provisions, the CARES Act authorizes district courts to use video teleconferencing to hold felony sentencings under appropriate circumstances and with the consent of the defendant after consultation with counsel. *See* CARES Act, § 15002(b)(2), H.R. 748, 248-49; *id.* § 15002 (b)(4) ("Video teleconferencing . . . authorized under paragraph . . . (2) may only take place with the consent of the defendant . . . after consultation with counsel."). Specifically, the following three conditions must be met: (1) the Judicial Conference of the United States must "find[] that emergency conditions due to the national emergency declared by the President . . . with respect to the [COVID-19] will materially affect the functioning of [] the Federal courts generally;" (2) the chief judge of a district court covered by that finding must "specifically find[] . . . that . . . felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety;" and (3) "the district judge in a particular case finds for specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice." *See id.* § 15002(b)(2),

On March 29, 2020, the Judicial Conference of the United States found, pursuant to the CARES Act, that emergency conditions due to the national emergency declared by the President with respect to COVID-19 have materially affected and will materially affect the function of the federal courts generally.

On April 9, 2020, the Chief Judge of the District Court of the Virgin Islands entered a third general order responding to the COVID-19 pandemic. In that order, the Chief Judge found that felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure

cannot be conducted in person in this judicial district without seriously jeopardizing public health and safety. As such, the April 9, 2020 Order authorized the use of videoconferencing to conduct felony sentencing for a period of 90 days. On July 8, 2020, the Chief Judge of the District Court of the Virgin Islands entered an order extending the April 9, 2020 Order for another 90-day period unless terminated earlier.

The "court must impose sentence without unnecessary delay." Fed. R. Crim. P. 32(b)(1). Without an end, or even an abatement, in sight to the ongoing COVID-19 pandemic, the indefinite delay of these sentencing hearings "would only add to the enormous backlog of criminal and civil matters facing this Court, and every Judge in this District, when normal operations resume." *E.g., United States v. Hernandez,* 2020 WL 2850222, at *3 (C.D. Cal. June 1, 2020); *United States v. Soe*, 2020 WL 3483588, at *3 (C.D. Cal. June 25, 2020). Golden asserts the continued spread of COVID-19 and her heightened risk of substantial complications therefrom as bases for her motion. ECF No. 228, at 2-4.

The continued delays to in-person proceedings, and their resultant backlog of cases, undermine the Court's ability to efficiently manage its docket. This inefficiency consequently weighs heavily against the public's interest in judicial economy. *See In re Modafinil Antitrust Litigation*, 837 F.3d 238, 268 (3d Cir. 2016) ("'Judicial economy' means '[e]fficiency in the operation of the courts and the judicial system… .") (Rendell, J., concurring in part). Thus, Rule 32(b)(1)'s requirement that a sentence be imposed without unnecessary delay intertwines considerations of judicial economy with the interest of justice, particularly in the abnormal context of the COVID-19 pandemic. *Cf. In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) ("public interests… derive from 'the interest of justice.'… We regard these public interests to include judicial economy considerations.") (internal citations omitted).

Here, the interests of justice necessarily cannot be served by unduly delaying a defendant's sentencing once a guilty plea has been entered. *Cf. Pennsylvania v. Ritchie*, 480 U.S. 39, 50 n. 8 (1987) ("The interests of judicial economy and the avoidance of delay, rather than being hindered, would be best served by resolving the issue."). Where a defendant has, as Golden has in this case, consented to sentencing by video teleconferencing through her

attorney (ECF No. 228, at 2), such an indefinite delay causes continued serious harm to the public's interest in judicial economy, and by extension, the interests of justice. *Cf. Howmedica*, 867 F.3d at 402.

In addition to concerns raised by the continued delay of in person proceedings and the resultant backlog, the Court is persuaded by Golden's concerns of spending a longer period incarcerated than she otherwise would if sentenced immediately. In her motion, Golden argues that her advanced age of 60 years old, as well as underlying health conditions such as asthma, place her at an increased likelihood for substantial complications if she were to contract COVID-19. Further, Golden argues that her sentencing guidelines call for, at most,[1] a sentence of 24-30 months; that she has already served seven months of incarceration awaiting sentencing; that she will have roughly 17 months remaining on her sentence if sentenced to the lower end of the Government's proposed range; and that she will have already served more than a quarter of that sentence. ECF No. 228, at 3. Because the Bureau of Prisons has released guidance permitting the discretionary release of inmates to home confinement who have served either more than half of their sentence or have less than 18 months remaining and have served over a quarter of their sentence, and because Golden suffers from health conditions associated with a heightened risk of significant COVID-19 related complications, Golden argues that she would be given priority consideration for early release into home confinement, which she cannot be eligible for until sentencing. *Id.* at 3-4. Golden asserts that this causes the continued delay of her sentencing to weigh against the interests of justice, as she would ultimately serve a longer period of incarceration than she otherwise would if sentenced immediately.[2]

Since the enactment of the CARES Act, most district courts have found that serious harm to the interests of justice exists when delay risks harm to a defendant's due process rights by, for example, forcing defendant to serve greater time in custody than the guideline range would recommend for her offense. *Cf. United States v. Short*, No. 3:15-CR-0174, 2020

---

[1] Golden herself asserts that the correct guideline range is 18-24 months and that she should receive a variance and downward departure. ECF No. 228, at 3. However, Golden applies the Government's higher proposed guideline in her calculations for the purposes of her motion. *Id.*

[2] The Court has made no finding that Golden would be entitled to a downward departure due to her medical conditions.

U.S. Dist. LEXIS 72509 (D. Conn. Apr. 24, 2020); *United States v. Collazo*, No. 2:19-00120, 2020 U.S. Dist. LEXIS 67949 (S.D.W.V. Apr. 17, 2020); *United States v. Emory*, No. 19-00109 JAO, 2020 U.S. Dist. LEXIS 66148 (D. Haw. Apr. 13, 2020); *United States v. Jones*, No. 19-225, 2020 U.S. Dist. LEXIS 58149 (D. Minn. Apr. 2, 2020); *United States v. Harry*, No. 19-cr-535, 2020 U.S. Dist. LEXIS 56323 (E.D.N.Y. Mar. 31, 2020).

Here, while Golden has not yet served the minimum term of the guideline range,[3] a delay in the sentencing hearing will result in a delay of the BOP's consideration of Golden for home confinement. As such, Golden will not be eligible for this release consideration until this Court sentences her. Similar to forcing a defendant to serve greater time in custody than recommended for her offense, delaying the sentencing hearing in this matter would leave Golden in a state of limbo—where the BOP cannot consider her for home confinement because she has not yet been sentenced by this Court. This runs contrary to the interests of justice, and further supports the finding that Golden's sentencing cannot be further delayed.

The premises considered, it is hereby

**ORDERED** that Golden's motion (ECF No. 228) is **GRANTED**; it is further

**ORDERED** that Golden shall be permitted to attend her August 13, 2020, sentencing by video teleconferencing; and it is further

**ORDERED** that the public may access the audio of the video conference proceedings in this matter by calling 1-888-251-2909 and entering access code 5157509#.

**Date:** August 10, 2020                                        */s/ Robert A. Molloy*
                                                                **ROBERT A. MOLLOY**
                                                                **District Judge**

---

[3] While there appears to be some disagreement between the United States Office of Probation ("Probation"), the United States, and Golden as to the appropriate guideline range, it is undisputed that she has not served the minimum term according to any of the ranges calculated by the parties or Probation.