DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cr-0047 |
| ) | |
| VIOLET ANNE GOLDEN and STEPHANIE ) | |
| BARNES, ) | |
| ) | |
| Defendants. ) | |

**ATTORNEYS:**

**Gretchen C.F. Shappert, United States Attorney**
**Nathan Brooks, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
 *For the United States of America,*

**David J. Cattie**
The Cattie Law Firm, P.C.
St. Thomas, U.S.V.I.
 *For Defendant Violet Anne Golden.*

## MEMORANDUM OPINION

**MOLLOY, J.**

  **BEFORE THE COURT** is the motion of Violet Anne Golden ("Golden") for compassionate release, filed on November 5, 2020. (ECF No. 250.) For the reasons stated below, the Court will deny the motion.

### I.  BACKGROUND

  On July 11, 2019, a federal grand jury in the U.S. Virgin Islands returned a thirty-count indictment, followed on November 21, 2019 by a thirty one-count superseding indictment, charging Golden and her codefendant Stephanie Barnes ("Barnes") with various offenses

stemming from an alleged ongoing conspiracy wherein Golden, then the Chairperson of the Virgin Islands Casino Control Commission (the "CCC") and Barnes, then a contractor of the CCC, wrongly appropriated a sum of $473,000.00 obtained from Divi Casino for purported back licensing fees under threat of closure for their own personal use. Golden made numerous personal purchases with CCC credit cards, paid those bills using funds appropriated from Divi Casino's payment of purported back fees, and supported those personal expenses through falsified invoices. On January 14, 2020, Golden withdrew her previously entered not-guilty plea and pled guilty to Counts Four (Theft from Programs Receiving Federal Government Funds in violation of 18 U.S.C. § 666) and Twenty-Seven (Failure to File Tax Return, in violation of 33 V.I.C. § 1524) of the superseding indictment.

On August 13, 2020, the Court sentenced Golden to twenty-four months incarceration as to Count 4 of the indictment, to be served concurrently with a separate twelve-month sentence on Count 27, a Virgin Islands local count. Golden was further sentenced to three years supervised release, following her release from incarceration. Golden's projected release date is September 25, 2021.[1]

On September 27, 2020, forty-five days after her sentencing, Golden sought compassionate release from the warden of MDC Guaynabo, where she is being held. Golden asserts that her request to the Bureau of Prisons ("BOP") went unanswered. On November 5, 2020, Golden filed the instant motion for compassionate release. (ECF No. 250.) In her motion, Golden asserted that the generalized threat to prison populations presented by the COVID-19 pandemic coupled with her morbid obesity, asthma, gout, and hypertension

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last accessed February 12, 2021).

present an extraordinary and compelling reason to warrant relief under 18 U.S.C. § 3582(c)(1)(A). On November 19, 2020, the United States of America (the "Government") filed its opposition to Golden's motion for compassionate release. (ECF No. 251.) On November 22, 2020, Golden filed her reply thereto (ECF No. 252), and supplemented her motion on December 10, 2020 (ECF No. 257.)

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582, a sentencing court has the authority to modify a sentence imposed under certain conditions. Section 3582 provides in pertinent part that

> (A) the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . ., after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1).

The Third Circuit has explained that, prior to a District Court considering a defendant's motion for compassionate release pursuant to Section 3582(c)(1)(A), either (1) the Bureau of Prisons ("BOP") must have had 30 days to consider the defendant's request that the BOP move for compassionate release on his behalf, or (2) the defendant must administratively exhaust an adverse decision by the BOP in response to that defendant's request within that time period. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Failure to comply with Section 3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release." *See id.*

Once a defendant has met Section 3582(c)(1)(A)'s exhaustion requirement, "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'" *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "But before granting compassionate release, a district court must 'consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.'" *Id.* "Those factors include, among other things, 'the history and characteristics of the defendant' and 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct.'" *Id.* at 330 (citations omitted).

In addition, the United States Sentencing Commission has issued a policy statement addressing the reduction of sentences pursuant to Section 3582(c)(1)(A). That statement provides that a court may reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court determines that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. Application Note 1 to the USSC policy statement sets forth several circumstances under which the USSC has determined "extraordinary and compelling reasons" exist. Such circumstances include certain medical,

age-related, or family circumstances, and a catchall provision—where other extraordinary and compelling reasons exist in a defendant's case. U.S.S.G. § 1B1.13 cmt. n. 1(A)-(D).

The defendant has the burden to show she is entitled to a sentence reduction pursuant to Section 3582(c)(1). *Cf. United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (noting that the defendant has the burden of establishing that he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2)); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

### III.   DISCUSSION

Absent an endorsement from the warden of her correctional facility, Golden must first make the threshold showing that she has exhausted her administrative remedies to succeed on her motion for compassionate release. *See* 18 U.S.C. § 2582(c)(1)(A). Only upon such a showing may the Court proceed to consider whether extraordinary and compelling reasons warrant a reduction of Golden's sentence. *See Raia*, 954 F.3d at 597.

**A. Golden has exhausted her administrative remedies.**

Here, Golden asserts that she made a request to the warden at her facility September 27, 2020 (ECF No. 250-2) before filing her motion for compassionate release on November 5, 2020. Given this, it is clear that the 30-day exhaustion period has expired. As such, the Court has the authority to consider the merits of Golden's motion.

**B. Golden does not demonstrate extraordinary and compelling circumstances to warrant early release.**

In her motion, Golden argues that she "faces an increased risk of harm, and even death, due to various comorbidities." ECF No. 250, at 4. Specifically, Golden cites her age (61

years old), as well as her "morbid obesity, asthma, gout, and hypertension." *Id.* Golden provides voluminous medical records supporting these diagnoses. *See generally* ECF No. 250-1. Golden further argues that "each of these medical conditions place Ms. Golden at an increased risk of death or harm due to Covid-19," though she provides no evidence of any correlation between gout and the increased potential severity of a COVID-19 infection, nor can the Court independent discover any. *Id.*

The Court readily accepts that the ongoing COVID-19 pandemic has created a novel area of compassionate release jurisprudence, which often requires the crafting of prophylactic remedies. COVID-19 is a highly transmissible and deadly disease which has claimed over 503,000 lives thus far in the United States, 222 of whom were federal inmates in BOP custody. As of January 25, 2021, "3,540 federal inmates and 2,005 [Bureau of Prisons ("BOP")] staff [ ] ha[d] confirmed positive test results for COVID-19 nationwide."[2] *See United States v. Whitted*, No. 3:04-CR-0176, 2021 WL 293316, at *3 (D.V.I. Jan. 28, 2021).

In the time since, the rate of infections in BOP facilities number has fallen dramatically. As of today's date, there are 1,519 federal inmates and 1,661 BOP staff who have active confirmed positive test results for COVID-19 nationwide – nearly a 60% reduction in inmate infections over roughly a one-month period. *Federal Bureau of Prisons COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/faq.jsp (last visited Feb. 24, 2021). Fourteen of these cases are currently active at MCD Guaynabo. *Id.* There are "[c]onfirmed active [COVID-19] cases at 128 BOP facilities and 28 RRCs." *Id.* The BOP, as well

---

[2] The *Federal Bureau of Prisons COVID-19 Coronavirus* website states, "The inmate totals listed do not include inmates participating in the Federal Location Monitoring program, inmates supervised under the USPO, or [those] being held in privately-managed prisons . . . ."

as the nation at large, is seeing concerning levels of the highly transmissible virus, the only preventions for which are physical distance, mask-wearing, and disinfection to reduce one's exposure. This precipitous decline in active cases gives reason for cautious optimism.

The Centers for Disease Control and Prevention ("the CDC") has identified age as the primary risk factor for severe illness or death from COVID-19, stating "that [a]mong adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. The CDC reports eight out of ten COVID-19 deaths reported in the United States have been adults sixty-five-years-old and older." *United States v. Brunetti*, 2020 U.S. Dist. LEXIS 136053, at *11 (E.D. Pa. July 31, 2020) (internal quotations removed). The CDC reports that the hospitalization rate for 65- to 74-year-olds is five times higher than it is in individuals age 18 to 29, with the rate of death from COVID ninety (90) times higher. At age 75, the rate of death jumps to 220 times higher than that of 18- to 29-year-olds. *See* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last visited Jan. 11, 2021). These heightened primary age-related risk factors, however, do not apply to Golden, who is 61 years of age.

In addition to age, the CDC has identified underlying medical conditions that increase the risk of severe illness or death from COVID-19—with Golden's primary underlying condition of morbid obesity among those in the highest risk category. *People with Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 23, 2021). Notably, certain heightened risk factors are more volitional (e.g., smoking, pregnancy) than others (e.g., cancer, chronic kidney disease). *Id.*

The CDC also lists numerous other conditions that "might" increase the risk of severe illness or death from COVID-19, among which are hypertension and moderate-to-severe asthma. *Id.*; *cf. United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) ("An early World Health Organization report on COVID-19 found that '[i]ndividuals at highest risk for severe disease and death include people . . . with underlying conditions such as hypertension [and] diabetes.'"); *United States v. Pabon*, 458 F. Supp. 3d 296, 299 (E.D. Pa. 2020) ("According to a CDC report, 'nearly 90% of adult patients hospitalized with COVID-19 in the US had one or more underlying diseases,' and out of those patients 49.7% of them had hypertension and 28.3% of them had diabetes."). Golden alleges that she suffers from both hypertension and asthma, though no evidence appears on the record to indicate that her asthma rises to the level of moderate-to-severe, nor does she argue as much. *See, e.g.,* ECF No. 250-1, at 27 (characterizing the frequency of Golden's asthma episodes at "once or twice a week."); *Asthma Care Quick Reference Guide*, U.S. DEP'T OF HEALTH AND HUMAN SERVS., (Sept. 2012), https://www.nhlbi.nih.gov/sites/default/files/media/docs/12-5075.pdf (last accessed Feb. 23, 2021) (describing the frequency of asthma symptoms for moderate asthma as "daily," and as "throughout the day" for severe asthma).

Pursuant to the CDC's guidance, the only risk factor faced by Golden that would certainly put her at an increased risk of serious illness resulting from a COVID-19 infection is her morbid obesity, while her hypertension "might" exacerbate such a potential infection. These medical conditions do not rise to the level of a terminal illness, nor do they substantially diminish Golden's ability to provide self-care from within MDC Guaynabo. *See* U.S.S.G. § 1B1.13 cmt. n. 1(A) (medical-related "extraordinary and compelling reasons exist"

where "defendant is suffering from a terminal illness" or "suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility… ."). The Government correctly notes that Golden does not "attempt to demonstrate that her claimed medical conditions or the situation at MDC Guaynabo in any way impairs her ability to provide self-care." ECF No. 251, at 11.

Obesity[3] and hypertension, even combined, are routinely insufficient to warrant compassionate release. *See, e.g., United States v. Whiteman,* No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (denying compassionate release of a defendant whose "only active health problems are obesity and high blood pressure"); *United States v. Takewell*, No. 14-00036, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020) (denying compassionate release upon finding that the defendant's "general complaint[s] [of] obesity and hypertension are not consistent with extraordinary or compelling circumstances as provided by the policy statement and its commentary"); *United States v. Wax*, No. 14-251, 2020 WL 3468219, at *2–3 (D.N.J. June 25, 2020) (same); *but see United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release to an incarcerated person based on his obesity alone: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19.").

---

[3] Obesity and severe obesity are placed at the same tier of heightened risk under CDC guidelines, and thus are considered by this Court to be sufficiently analogous. *See People with Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 17, 2021).

*U.S. v. Golden, et al.*
Case No. 3:19-cr-0047
Memorandum Opinion
Page 10

The Eastern District of Pennsylvania has recently addressed the case of Melvin Neal, who sought compassionate release due to his age, asthma, hypertension, and borderline obesity.[4] *United States v. Neal*, No. 2:08-CR-00628-JMG-5, 2020 WL 5993290 (E.D. Pa. Oct. 9, 2020). First, the district court quickly dispensed with age as a risk factor for Neal, finding that at 52 years old, Neal did not fall into the CDC's age-related risk category, which began at 65. *Id.* at *5. In determining the severity of Neal's asthma, the district court looked to his lung function, his blood oxygen saturation rates, and his inhaler usage, finding that the performed lung function and blood oxygen saturation tests returned normal results and his inhaler usage was less than prescribed. *Id.* at *6. Evaluating Neal's hypertension, the district court looked to the blood pressure readings provided in Neal's medical records and compared them to the American Heart Association's categorization of hypertensive severity, as indicated by blood pressure readings. *Id.* After carefully reviewing his medical conditions, the district court found that Neal's "hypertension is ordinary, his asthma is mild, and both are currently controlled with medications." *Id.*

---

[4] Neal's alleged body mass index was 29.3. *Neal*, 2020 WL 5993290 at *1. The CDC threshold for obesity as a COVID-19 risk factor begins at 30.0. *People with Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 23, 2021).

Likewise, Golden's hypertension is "well controlled"[5] with medication and is ordinary,[6] her asthma is "doing good"[7] with no indication that it is moderate or severe, and is similarly managed,[8] and her morbid obesity is being treated, as she is receiving "extensive education on diet, exercise and adequate hydration." ECF No. 250-1, at 19.  Moreover, as the Government notes, there is no evidence to indicate that Golden's conditions are terminal, nor do they "impair[] her ability to provide self-care." ECF No. 251, at 11; U.S.S.G. 1B1.13, Application Note 1(A)(ii). Golden does not dispute this point in her reply brief. The record further indicates that Golden has regular access to timely and appropriate medical care as needed. As such, the Court cannot find that Golden's medical conditions provide a sufficient basis to find extraordinary and compelling circumstances justifying her early release.

---

[5] ECF No. 250-1, at 19 ("Case of a 60 years old female with well controlled blood pressure presently hemodynamically stable voicing no complaints.").

[6] *See* ECF No. 250-1, at 4 (showing that Golden is undertaking a prescription regimen to treat her hypertension, and a blood pressure reading of 149/90); ECF No. 250-1, at 19 (showing a blood pressure reading of 126/74). Golden's hypertension has ranged between elevated and Stage 2 hypertension. S*ee High Blood Pressure*, AMERICAN HEART ASSOCIATION, https://www.heart.org/en/health-topics/high-blood-pressure (last visited Feb. 18, 2021). Stage 1 and 2 hypertension have been considered 'ordinary' within this circuit, in contrast to extraordinary and compelling circumstances. *See Neal*, 2020 WL 5993290, at *6 n. 8. 'Elevated' blood pressure, a step less severe than Stage 1, is similarly not extraordinary, and corroborates Golden's doctor's finding (*supra,* n. 5) that her condition is "well controlled."

[7] ECF No. 250-1, at 27. Golden's oxygen saturation levels have appeared to be normal on all occasions tested. ECF No. 250-1, at 1, 8, 14, 18, 25, 28, 34, 38, 58-59. *See Hypoxemia*, Mayo Clinic, https://www.mayoclinic.org/symptoms/hypoxemia/basics/definition/sym-20050930 (last accessed February 19, 2021) ("Normal pulse oximeter readings usually range from 95 to 100 percent. Values under 90 percent are considered low.").

[8] ECF No. 250-1, at 15 (renewing a prescription for an Albuterol Inhaler, ordered "AS NEEDED."). Based on the medical records provided, it appears that Golden has filled her inhaler prescription three times in the time spanning from January 28, 2020 to September 18, 2020. ECF No. 250-1, at 77. Absent any evidence pertaining to actual dosage, the Court cannot make any conclusion as to how this usage pattern may or may not militate in Golden's favor, nor does Golden argue as much. *Cf. Jones,* 836 F.3d at 899 (noting that the defendant has the burden of establishing that he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2)).

Even assuming Golden's health conditions put her at an increased risk of severe outcomes from COVID-19 sufficient to demonstrate extraordinary and compelling circumstances, Golden still does not qualify for compassionate release. Golden has failed to show that there is a non-speculative risk of exposure to COVID-19 at MDC Guaynabo. In her most recent filing, Golden argued that MDC Guaynabo had 18 active inmate cases, and "that number is sure to continue to rise." ECF No. 257, at 2. While it may have risen in the interim, the number of active cases is now at fourteen. *See Federal Bureau of Prisons COVID-19 Coronavirus, supra*.

While the Court understands Golden's concerns regarding the spread of COVID-19 in light of her health issues, the Third Circuit has warned that the BOP's "statutory role, and its extensive and professional efforts to curtail the virus's spread" make the existence of COVID-19 insufficient to independently justify compassionate release. *Raia*, 954 F.3d at 597. The Court cannot find that fourteen cases constitutes current widespread transmission of COVID-19 at MDC Guaynabo, and Golden therefore fails to show a non-speculative transmission risk that would justify compassionate release. *See, e.g., United States v. Gold*, 459 F.Supp.3d 1117, 1120 (N.D. Ill. 2020) (finding even courts that take a "liberal view" of the Commission's policy statements routinely deny compassionate release if defendant's facility does not have widespread transmission and defendant's health risk factors are shared by many other prisoners). Accordingly, the Court finds that Golden has failed to demonstrate extraordinary and compelling circumstances to justify her release.

### C. The section 3353(a) sentencing factors weigh against Golden's release.

Even if Golden had presented extraordinary and compelling reasons, it would not complete the compassionate release analysis. The Court would still need to consider the sentencing factors outlined at 18 U.S.C. § 3553(a) to the extent that they are applicable and determine "whether these factors *outweigh* the extraordinary and compelling circumstances." *Neal*, 2020 WL 5993290, at *7 (emphasis in original). Those factors include, among other things, the nature and circumstances of the offense, "'the history and characteristics of the defendant' and 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct.'" *Pawlowski*, 967 F.3d at 330 (citing 18 U.S.C § 3553(a)(1-2)) (internal citations omitted). These factors weigh against Golden.

First, the nature and circumstances of the offense, as well as the history and characteristics of the defendant weigh heavily against Golden. At the end of her long career in public service, Golden occupied a position of public trust as the Chairperson of the Virgin Islands Casino Control Commission. The violation of that trust was particularly egregious, considering the strong controls the Casino Control Commission itself imposes on individuals and businesses seeking licensure. *See* 32 V.I.C. § 436 *et seq.* In the course of committing her crimes, she misappropriated nearly $300,000.00 of public funds to bankroll extravagant private flights, luxury hotel stays, and tickets to attend the musical Hamilton on Broadway, among other things. Despite accepting responsibility by pleading guilty, Golden showed little remorse, instead asserting that some of the misappropriated money was used for ostensibly

justifiable expenses. Golden's allocution effectively served as her own Reynolds Pamphlet.[9] The Court concludes that these factors weigh against the defendant.

Next, the sentence imposed must serve to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct. Golden was sentenced on August 13, 2020 to a term of twenty-four months imprisonment, to be served concurrently with her twelve-month local sentence. Golden has been incarcerated since January 14, 2020, and has served roughly thirteen months of her sentence – 54%, If Golden were released today, she would be released having served only thirteen months imprisonment for the embezzlement of nearly $300,000.00 from the People of the Virgin Islands. The Court cannot condone this. A thirteen month incarcerative sentence does not promote respect for the law, does not reflect the seriousness of the offense, does not provide just punishment, and does not afford adequate deterrence to other public officials who might themselves consider betraying their positions of trust. As the Court noted at Golden's sentencing, Golden is the latest in a too-long line of corrupt public officials who undermine the trust that Virgin Islanders have in their government. A thirteen-month sentence does little to restore that trust. These considerations, too, weigh against Golden.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Golden does not qualify for compassionate release. Golden's age and medical conditions do not warrant extraordinary and compelling circumstances warranting release. She has failed to show that there is a non-

---

[9] *See generally* Alexander Hamilton, Reynolds Pamphlet, (1797) (available at https://founders.archives.gov/documents/Hamilton/01-21-02-0138-0002) (last accessed Feb. 24, 2021).

speculative risk of exposure to COVID-19 at MDC Guaynabo and the section 3553(a) factors further weigh against her release. Therefore, the Court will deny Golden's motion for compassionate release by separate order.

**Dated:** March 1, 2021                     /s/  *Robert A. Molloy*
                                                                        **ROBERT A. MOLLOY**
                                                                         **District Judge**